IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARLA GREENE

v.                                  : Civil Action No. DKC 2006-1846

SAWYER PROPERTY MANAGEMENT
 OF MARYLAND, LLC, et al.          :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this Family and Medical Leave Act case is the motion of Defendants Sawyer Property Management of Maryland, LLC, and Sawyer Property Management of Maryland, Inc., for summary judgment. (Paper 14). The issues are fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, Defendants' motion will be denied.

## I.  Background

The following facts are either uncontroverted or construed in the light most favorable to Plaintiff, the non-moving party. Plaintiff Marla Greene was hired by Defendants to serve as a leasing consultant/resident relations manager on August 1, 2003. (Paper 14, Ex. 1). On October 11, 2004, Plaintiff took medical leave pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2604 *et seq.* ("FMLA"). (Paper 14, Ex. 2). Under "reason for request," she checked the option: "[a] serious health condition

that makes you unable to perform the essential functions for your job[.]" (*Id.*).

Initially, Plaintiff was scheduled to return to work on December 10, 2004. (*Id.*). On December 10, 2004, Plaintiff met with her physician who recommended that she return to work January 3, or later. (Paper 14, Ex. 3). Plaintiff did not return to work during the month of December.

On December 29, 2004, Plaintiff's physician, Dr. Maya Salameh, filled out a form, indicating that Plaintiff could not return to work at that time because she was "on pain medications that cause[d] increased sleepiness." (Paper 14, Ex. 4). Dr. Salameh further indicated that Plaintiff could return to work during the first or second week of January if she limited walking, and could return to work without restrictions in mid-January. (*Id.*).

Plaintiff attempted to return to work on January 3, 2005, the day her FMLA leave expired. Defendants' Operations Manager, Andrew Drier, testified that Plaintiff "had open sores on her legs and was not able to perform the essential functions of the job." (Paper 14, Ex. 5, Drier Aff. ¶ 6). Mr. Drier sent Plaintiff home. (*Id.* ¶ 7). Plaintiff's employment was terminated on January 4, 2005. (Paper 1, ¶ 11).

On July 20, 2006, Plaintiff filed suit in this court alleging willful violation of the FMLA (count one), and negligent violation

of the FMLA (count two).  Defendants filed the instant motion for summary judgment on November 16, 2006.

## II.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential

element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Motion for Summary Judgment

Plaintiff alleges that Defendants violated the FMLA by failing to restore Plaintiff to her original position at the expiration of her medical leave. Defendants contend that they were not obligated to restore Plaintiff to her former position because, upon the expiration of her FMLA leave, she was unable to perform the essential functions of her job.

The United States Court of Appeals for the Fourth Circuit recently explained the structure of the FMLA:

> The FMLA provides covered employees with
> two types of rights and protections. First,

5

covered employees who take a leave of absence for family or medical reasons qualify for numerous substantive entitlements. Specifically, these employees are "entitled to a total of 12 workweeks of leave during any 12-month period" for family- and health-related matters, [29 U.S.C.] § 2612(a)(1), and have a right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." *Id.* § 2614(a)(1)(A)-(B). Leave taken under the FMLA "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." *Id.* § 2614(a)(2). However, a restored employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *Id.* § 2614(a)(3)(B).

These substantive rights, and their accompanying protections, *see id.* § 2615(a)(1), are *prescriptive*, "set[ting] substantive floors for conduct by employers, and creating entitlements for employees." *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998) (quoting *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712-13 (7th Cir. 1997)) (internal quotation marks omitted) (amendment in original). *See also Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000) (explaining that "in §§ 2612-2615, the Act contains prescriptive protections for employees that are expressed as substantive statutory rights"). Claims of alleged violations of these prescriptive rights – known as "interference" or "entitlement" claims - arise under 29 U.S.C. § 2615(a)(1), which states that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

In addition to these prescriptive rights and protections, the Act also contains

6

> *proscriptive* provisions that protect employees
> from discrimination or retaliation for
> exercising their substantive rights under the
> FMLA.  *See Hodgens*, 144 F.3d at 159-60; *Rice*,
> 209 F.3d at 1017.  Known as "retaliation" or
> "discrimination" claims, causes of action
> alleging violations of these proscriptive
> rights arise under 29 U.S.C. § 2615(a)(2),
> which states that "[i]t shall be unlawful for
> any employer to discharge or in any other
> manner discriminate against any individual for
> opposing any practice made unlawful by this
> subchapter."

*Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 546 (4th Cir. 2006) (emphasis in original).  As a matter of first impression, the *Yashenko* court also held that the FMLA does not provide an "absolute right to restoration to a prior employment position."  *Id.* at 549.

It is uncontested that Plaintiff received the full 12 weeks of leave to which she was entitled.  Plaintiff claims, however, that Defendants "interfered" with her FMLA rights when they failed to reinstate her to her previous position at the expiration of her leave.  Plaintiff does not allege that Defendants retaliated against her for exercising her rights under the FMLA.

Defendants moved for summary judgment, arguing that when Plaintiff attempted to return to work at the end of her leave, "she could not perform the essential functions of her job because she could not stand for a prolonged period and was taking medication that made her drowsy."  (Paper 14, at 4).

7

Under the FMLA, an eligible employee is entitled, upon return from FMLA leave, to be restored "to the position of employment held . . . when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). If an employee is unable to "perform an essential function" of her job "because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA." 29 C.F.R. § 825.214(b); *Holmes v. e.spire Comm'cns,* 135 F.Supp.2d 657, 665 (D.Md. 2001). If, however, Plaintiff was able to return to work upon the expiration of her FMLA leave, then Defendants are liable for failing to restore her to her former position. 29 U.S.C. § 2614(a)(1)(A). In the FMLA context, an employee is "unable to perform the functions of the position" when a doctor determines that the employee is unable "to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the regulations at 29 C.F.R. § 1630.2(n)." 29 U.S.C. § 825.115.

Evidence of whether a particular function is essential includes, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the

function; (v) the terms of a collective bargaining agreement; (vi) the work experience of past incumbents in the job; and/or (vii) the current work experience of incumbents in similar jobs. 29 C.F.R. § 1630.2.

Plaintiff's job description lists thirteen "primary responsibilities," comprising mainly administrative functions.[1] The job description also lists the physical demands of the job,

---

[1] The primary responsibilities listed on Plaintiff's job description, (paper 17, Ex. C), are:

    1. Assist with the planning, organizing and implementing of resident initiatives. . . .
    2. Coordinate the activities of established resident retention and related programs.
    3. Partner and work closely with residents, community organizations, and law enforcement agencies to achieve optimum operating results.
    4. Assist with the needs assessments and surveys conducted by the community.
    5. Actively reach out to the community to involve them in recreational and community programs. . . .
    6. Assist with the coordination and supervision of on-site special events.
    7. Prepare and maintain a variety of narrative, statistical and fiscal program records and reports.
    8. Take all residents' complaints and requests. . . .
    9. Complete, record, follow up on, and file work orders
    10. Answer phone calls, open incoming mail, and distribute accordingly
    11. Effectively handle all administrative and clerical responsibilities of the office
    12. Assist leasing and other departments as directed by supervisor
    13. All other duties as determined by the Resident Relations Manager or Community Manager.

*inter alia*, the "employee frequently is required to stand, walk, and sit." (Paper 17, Ex. C).

Defendants have not attempted to define the essential functions of Plaintiff's former job. Plaintiff, however, has submitted an affidavit that stated she performed the duties described in her job description, and that most, if not all, of those duties did not include walking. (Paper 17, Greene Aff. ¶¶ 5-6). Plaintiff further testified that during the previous year and a half of employment in that position, she was required to walk on a limited basis only, and most of her duties could be completed at her desk. (*Id.* ¶ 10). Thus, the uncontroverted evidence indicates that the essential functions of Plaintiff's former job included only a limited amount of walking.

As proof that Plaintiff was unable to perform her essential job functions on January 3, 2005, Defendants rely on two pieces of evidence. First, Defendants point to the form completed by Plaintiff's physician on December 29, 2004. (Paper 14, Ex. 4). The form stated that Plaintiff could not return to work "at this time," even if accommodations were made, because "she is on pain medications that cause increased sleepiness." (*Id.*). The form also stated that the doctor's "best estimate" was that Plaintiff would be able to return to work the "1st or 2nd week of January" if she limited walking, or "mid-January" without restrictions. (*Id.*). Defendants contend that this form is proof that on January 3,

10

Plaintiff was unable to return to work because the medications she took caused drowsiness. Construing the facts in the light most favorable to Plaintiff, as is required at the summary judgment stage, this form indicated that Plaintiff was unable to return to work on <u>December 29</u>, because her medications caused drowsiness; it did not indicate that on January 3 Plaintiff was still taking medications that caused drowsiness. In fact, the form indicated that Plaintiff could return to work the first week of January. (Paper 14, Ex. 4). January 3 marked the first Monday in January 2005.

Defendants also rely on the affidavit of Mr. Drier, who testified that he sent Plaintiff home from work on January 3, 2005 "as a result of her inability to perform the essential functions of her job." (Paper 14, Ex. 5, ¶ 8). Mr. Drier stated that Plaintiff had open sores on her legs, but offers no specific facts regarding her ability to work on January 3. Simply stating in an affidavit that Plaintiff was unable to perform the essential functions of her job, without specific facts to support such a statement, is conclusory and insufficient to establish that fact as a matter of law. *See Guinness PLC v. Ward*, 955 F.2d 875, 901 (4th Cir. 1992) ("the mere placement of . . . conclusory allegations and speculative assertions into affidavits or declaration without further legitimate support clearly does not suffice" to overcome summary judgment). Defendants do not explain how Plaintiff's leg

sores prevented her from being able to perform the essential functions of her job. Plaintiff submitted her own affidavit, testifying that the only limitation given to her by her doctor was to limit walking, and that this restriction did not interfere with any of her essential job functions because only limited walking was required in the position. (Paper 17, Greene Aff. ¶¶ 8-9).

Defendants have not provided evidence sufficient to establish, as a matter of law, that Plaintiff was unable to perform the essential functions of her job on January 3, 2005. A material question of fact exists as to whether Plaintiff was able to perform the essential functions of her job when she attempted to return to work upon the expiration of her FMLA leave. Accordingly, Defendants are not entitled to summary judgment on the question of whether they are liable under the FMLA for failing to restore Plaintiff to her former position at the expiration of her leave. *See* 29 U.S.C. § 2614(a)(1)(A).

## IV. Collateral Estoppel

Defendants raise a new issue in their reply brief. They argue that the doctrine of collateral estoppel precludes Plaintiff from litigating the issue of her ability to return to work on January 3, 2005, because she fully litigated this issue in her appeals before the Maryland Department of Labor, Licensing and Regulations ("DLLR"). (Paper 18, at 2). At a hearing on March 11, 2005, the parties appeared before the DLLR to appeal the denial of

12

unemployment benefits in two cases: appeal numbers 0503063 and
0503064.  The DLLR decisions are attached to paper 18 as exhibits
1 and 2.

The ordinary rule in federal courts is that an argument raised
for the first time in a reply brief or memorandum will not be
considered.  *See United States v. Williams*, 445 F.3d 724, 736 n.6
(4th Cir. 2006).  However, the power to decline consideration of
such arguments is discretionary, and courts are not precluded from
considering such issues in appropriate circumstances.  *See Clawson
v. FedEx Ground Package Sys., Inc*., 451 F.Supp.2d 731, 734 (D.Md.
2006).  Plaintiff has had an opportunity to respond to the
collateral estoppel issue, (*see* paper 20), and the court will deny
Defendants' argument on the merits.

"Under collateral estoppel, once an issue is actually and
necessarily determined by a court of competent jurisdiction, that
determination is conclusive in subsequent suits based on a
different cause of action involving a party to the prior
litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979).
The Fourth Circuit had held that "findings of fact made during
administrative adjudications are to be accorded the same collateral
estoppel effect they would receive if made by a court."  *Collins
v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).

> A party seeking to rely on the doctrine of
> collateral estoppel is obliged to establish
> five elements: (1) that "the issue sought to
> be precluded is identical to one previously

> litigated" ("element one"); (2) that the issue
> was actually determined in the prior
> proceeding ("element two"); (3) that the
> issue's determination was "a critical and
> necessary part of the decision in the prior
> proceeding" ("element three"); (4) that the
> prior judgment is final and valid ("element
> four"); and (5) that the party against whom
> collateral estoppel is asserted "had a full
> and fair opportunity to litigate the issue in
> the previous forum" ("element five").

*Collins*, 468 F.3d at 217-18 (quoting *Sedlack v. Braswell Servs.*

*Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).   In the instant

case, Defendants have failed to establish elements one, two, and

three.   Because Defendants are required to establish all five

elements, a failure to establish any one element is sufficient to

preclude reliance on the doctrine of collateral estoppel.

The issue in appeal number 0503063 was whether, on January 9,

2005 and weeks subsequent, "the claimant is able, available for

work and actively seeking work . . . and/or whether the claimant is

entitled to sick claim benefits. . . ."   (Paper 18, Ex. 1).   The

decision addressed Plaintiff's entitlement to unemployment benefits

starting on January 9 and therefore did not address, at all, the

issue of whether Plaintiff was able to perform the essential

functions of her job on January 3.   The issue in appeal number

0503064 was whether "the claimant's separation from this employment

was for a disqualifying reason[.]"   (*Id.*, Ex. 2).   Defendants had

argued that Plaintiff had abandoned her former position. The

decision stated, as part of its findings of fact, that Plaintiff's

14

physician "indicated that the claimant could not return to work" on January 3.  This finding presumably relied on the form filled out by Dr. Salameh on December 29, 2004.  (Paper 18, Ex. 2, at 2).  The decision did not discuss the nature of Plaintiff's essential job functions, nor did it discuss her ability to perform those functions on January 3.  Thus, the issue of whether Plaintiff was capable of performing her essential job functions on January 3, was not "actually decided" by either decision.  Furthermore, neither decision relied on a finding that Plaintiff was unable to perform the essential functions of her job on January 3, 2005, as required to establish element three.  For the foregoing reasons, Plaintiff is not collaterally estopped from litigating the issue of her ability to return to work on January 3, 2005.

**V.  Conclusion**

Defendants have failed to demonstrate that no genuine issues of material fact exist, thus, their motion for summary judgment will be denied.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
